UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALOMON CORDOVA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration,<br><br>　　　　　Defendant. | Case No. CV 12-8097-SP<br><br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

　　On September 19, 2012, plaintiff Salomon Cordova filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits. Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

1

Plaintiff presents four issues for decision: (1) whether the ALJ erred when she determined that plaintiff did not meet Listing 12.04; (2) whether the ALJ erred in her residual functional capacity ("RFC") determination; (3) whether the ALJ properly considered plaintiff's credibility; and (4) whether the ALJ erred at step five. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 1-9; Memorandum in Support of Defendant's Answer and in Opposition to Plaintiff's Memorandum in Support of Complaint ("D. Mem.") at 2-11.

Having carefully studied, inter alia, the parties's moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ: properly found that plaintiff did not meet or equal Listing 12.04; made a proper RFC determination; properly discounted plaintiff's credibility; and did not err at step five. Consequently, this court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-one years old on the date of his February 14, 2012 administrative hearing, has approximately a fourth grade education. AR at 55, 59, 61, 183; *see also id.* at 189, 286. Plaintiff has past relevant work as a construction worker. *Id.* at 70.

On September 21, 2010, plaintiff filed an application for a period of disability and DIB, as well as an application for SSI, alleging an onset date of May 1, 2004, due to right hand injuries, a dislocated disc in his back, and depression. *Id*. at 139-42, 146-49, 188. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 54, 80-89, 92-96.

On February 14, 2012, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 55-75. The ALJ also heard testimony

from Ruth Arnush, a vocational expert ("VE"). *Id.* at 70-74. On February 27, 2012, the ALJ denied plaintiff's applications for benefits. *Id.* at 26-35.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since May 1, 2004, the alleged onset date. *Id.* at 28.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine and depression. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 29.

The ALJ then assessed plaintiff's RFC,[1] and determined that he had the RFC to perform medium work, with the limitations that plaintiff: could stand/walk/sit six hours out of an eight-hour workday; could not perform fast-paced assembly line work; and could have occasional public contact. *Id.* at 31.

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work. *Id.* at 33.

At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including stone polisher and driver. *Id.* at 34. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act ("SSA"). *Id.* at 35.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-5. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that

of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

**A.  The ALJ Properly Found That Plaintiff Did Not Meet or Equal Listing 12.04**

Plaintiff complains that the ALJ erred at step three. P. Mem. at 1-5. Specifically, plaintiff contends that he met Listing 12.04. *Id.* The court disagrees.

At step three, the claimant has the burden of proving that he or she meets or equals a Listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). In order to meet Listing 12.04 (Affective Disorders), a claimant must satisfy the requirements in Paragraphs A and B or the requirements in Paragraph C. Paragraph A requires that a claimant demonstrate a certain number of factors characterizing depressive, manic, or bipolar syndromes. Paragraph B requires that the syndromes in Paragraph A result in at least two of the following: (1) marked restrictions in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining persistence, concentration, or pace; or (4) repeated episodes of decompensation, each of extended duration. Paragraph C requires that a claimant show a:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1.  Repeated episodes of decompensation, each of extended duration; or

|   |   |   |
|---|---|---|
| | 2. | A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or |
| | 3. | Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. |

#### 1.  Paragraph C

Plaintiff argues that he satisfied the requirements of Paragraph C of Listing 12.04 because the medical evidence documented a disorder of more than two years duration and two episodes of decompensation. P. Mem. at 2. But as the ALJ stated in her decision, "[r]epeated episodes of decompensation, each of extended duration, means three episodes within [one] year, or an average of once every [four] months, each lasting for at least [two] weeks." AR at 30; *see* Listing 12.00(C)(4). As plaintiff plainly acknowledges, he only had two episodes of decompensation in a 16-month period, only one of which lasted at least two weeks. *See* P. Mem. at 2; AR at 259, 420. Thus, plaintiff did not satisfy the requirements of Paragraph C.[2]

Plaintiff also did not meet his burden in demonstrating that he equaled the requirements of Paragraph C. An ALJ may find equivalence to repeated episodes of decompensation if a claimant has experienced "more frequent episodes of shorter duration or less frequent episodes of longer duration." Listing 12.00(C)(4). Here, the record shows that the duration of the two episodes were two weeks or shorter. *See* AR at 259, 420.

---

[2] Further, plaintiff's two episodes of decompensation occurred after the date last insured, December 31, 2007. AR at 216.

6

Substantial evidence supports the finding that plaintiff did not satisfy the requirements of Paragraph C.

### 2. **Paragraph B**

Assuming that plaintiff satisfied the requirements of Paragraph A, plaintiff still did not meet Listing 12.04 because he did not demonstrate at least two of the requirements of Paragraph B. As discussed *supra*, plaintiff did not have repeated episodes of decompensation. In addition, the ALJ also found that plaintiff had only mild restrictions in activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace. *Id.* at 30.

With respect to activities of daily living, the ALJ noted that plaintiff only had mild restrictions because he enjoyed taking walks and did small odd jobs. *Id.* Plaintiff disingenuously argues that the ALJ's analysis was flawed because it was inconsistent with her acknowledgment that plaintiff "could not even clothe or feed himself without the help of a local church." P. Mem. at 2. But the ALJ did not conclude that plaintiff could not engage in the act of feeding and dressing himself. Rather, the ALJ found that plaintiff relied on the charity of a local church to provide him food and clothing due to his lack of funds. AR at 30. Requiring financial assistance is not equivalent to being incapable of performing the daily activities of feeding and clothing oneself. As such, the record supports the ALJ's conclusion that plaintiff only had mild restrictions with regard to activities of daily living.

The ALJ also concluded that plaintiff had moderate difficulties in social functioning based on the fact that plaintiff was able to raise his daughters while his wife worked, depended on a friend for food and shelter, and went with a friend to Alcoholics Anonymous ("AA") meetings three times a week. *Id.* Plaintiff contends that he actually had marked difficulties with social functioning and the ALJ's reasons were flawed because the ALJ failed to consider that one of his

daughters was nearly an adult, the ALJ failed to ascertain what plaintiff did to take care of his daughters, and plaintiff was required to attend the AA meetings. P. Mem. at 3-4. Plaintiff's arguments are unavailing as each of the cited activities involve some social functioning, thus supporting the ALJ's finding of only moderate difficulties.

Finally, the ALJ found that plaintiff had moderate, not marked, difficulties with respect to concentration, persistence, or pace because he reported that he read for an hour a day and testified that he had almost completed eighteen months of court-ordered classes. AR at 30. Plaintiff argues that these reasons are not legitimate because plaintiff was required to attend the classes, the ALJ failed to ascertain the duration of each class, and the ALJ did not inquire as to what plaintiff read and in what language. P. Mem. at 4-5. Again, plaintiff's arguments are not convincing. Whether the classes were mandatory and what plaintiff read are irrelevant. The fact that plaintiff was capable of attending classes and reading supports the ALJ's conclusions.

Plaintiff had the burden to provide evidence that he met or equaled Listing 12.04, which he failed to do.[3] Substantial evidence supports the ALJ's conclusion.

**B.     The ALJ Made a Proper RFC Determination**

Plaintiff argues that the ALJ's RFC determination that he could perform medium work was erroneous. P. Mem. at 5-7. Specifically, plaintiff contends that the ALJ failed to consider his concentration, right hand, and back limitations. *Id.*

---

[3]  In support of his argument, plaintiff also references the opinion of his treating physician, Dr. Jonathan M. Weiner, which was submitted to the Appeals Council. P. Mem. at 6. In the opinion, Dr. Weiner, an internist, opined that plaintiff met Listing 12.04. AR at 442-43. This court declines to give Dr. Weiner's opinion any weight because Dr. Weiner is an internist, not a psychiatrist, and his opinion is not supported by his treatment records or the record as a whole.

RFC is what one "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner reaches an RFC determination by reviewing and considering all of the relevant evidence. *Id.*

Here, the ALJ determined that plaintiff had the RFC to perform medium work, with the limitations that plaintiff: could stand/walk/sit six hours out an eight-hour workday; could not perform fast-paced assembly line work; and could have occasional contact with the public. AR at 31.

### 1. **Concentration**

Plaintiff contends that he has concentration limitations and that the ALJ, in finding him incapable of performing fast-pace assembly line work, addressed his pace, but not concentration, limitation. P. Mem. at 5. Plaintiff's argument is conjecture.

First, the ALJ specifically stated that the limitations were due to plaintiff's struggles with alcohol and did not attribute the limitation to plaintiff's difficulties with pace. AR at 33. Second, the ALJ determined that plaintiff had only moderate difficulties with regard to concentration, persistence, **or** pace, specifically noting that plaintiff read for an hour a day and was able to complete eighteen months of court-ordered classes. *Id.* at 30. Thus, the ALJ never specifically concluded that plaintiff had concentration problems and indeed cited evidence to the contrary. *See id.* Finally, in making his RFC determination, the ALJ gave great weight to the opinion of examining psychiatrist, Dr. Kent Jordan, who concluded that plaintiff appeared to highly embellish, if not fabricate, psychiatric symptomatology, and did not demonstrate evidence of cognitive impairment. *See id.* at 32-33, 285. Dr. Jordan opined that plaintiff could, inter alia, perform detailed and complex work and complete a normal work day. *See id.* at 33, 289.

In sum, the ALJ clearly considered whether plaintiff's impairments caused concentration limitations, and substantial evidence supported the absence of a concentration limitation in her RFC determination.

### 2. Right Hand and Back

Plaintiff also complains that the ALJ erred because she failed to consider the limitations caused by his right hand and back. P. Mem. at 6-7. Plaintiff testified that he has problems lifting due to his right hand and back, and that he has no movement in his right hand. AR at 61. The court disagrees.

The medical records reflect that plaintiff had a right hand impairment and has a back impairment. With respect to plaintiff's right hand, he had two right wrist surgeries, one in July 1999 and a second in May 2000, to repair a proximal scaphoid fracture and improve stability. *Id.* at 426-30. The record contains no notes of any further treatment to the right hand or complaints to physicians.

As for plaintiff's back, the record contains three treatment notes from Dr. Jonathan Weiner, an internist, and two x-ray and MRI reports. *See id.* at 431-41. On July 5, 2007, plaintiff visited Dr. Weiner, who ordered physical therapy and prescribed anti-inflammatory drugs to treat the back pain. *See id.* at 433-35. On February 25, 2008, Dr. Weiner again treated plaintiff for back pain. *See id.* at 431-33. Dr. Weiner noted that plaintiff did not try physical therapy and again ordered the same treatment. *See id.* Plaintiff did not seek any additional treatment for his back pain until December 13, 2011, nearly four years later. *See id.* at 436. During the December 2011 visit, plaintiff reported to Dr. Weiner that he had been taking vicodin "off and on." *Id.* Dr. Weiner again prescribed pain medications and ordered x-rays and an MRI. *Id.* at 437. The x-rays showed that plaintiff had degenerative findings in the lumbar spine with disc narrowing at L4-5 and L5-S1. *Id.* at 438-39. The MRI revealed that plaintiff had "straightening of normal

lumbar lordosis with multilevel degenerative disc disease which includes disc desiccation" and "loss of normal intervertebral disc height." *Id.* at 441.

Dr. Weiner did not offer an opinion on any limitations plaintiff required due to his back pain. In the opinion submitted to the Appeals Council, Dr. Weiner merely recited the findings from the MRI report. *Id.* at 442-43. Thus, plaintiff's contention that the ALJ improperly rejected the opinion of a treating physician is baseless.

On February 4, 2011, Dr. John Simmonds, an orthopedist, examined plaintiff. *Id.* at 298-302. Plaintiff complained of neck, back, and left knee pain, and stated the prolonged standing and repetitive activities such as bending and heavy lifting aggravated the pain. *Id.* at 298-99. Plaintiff informed Dr. Simmonds of one of his hand surgeries but did not report any limitations relating to his right hand. *See id.* at 299. During the examination, Dr. Simmonds observed that plaintiff had a normal posture and gait and could move and sit in apparent comfort. *Id.* at 300. Dr. Simmonds noted that plaintiff had normal range of motion in the spine, but had pain along the paravertebral muscular groups. *Id.* at 300. Dr. Simmonds found that there was no evidence of swelling, effusion, erythema, warmth, or deformity of any of the joints in plaintiff's upper and lower extremities and his joint range of motion was within normal limits. *Id.* Dr. Simmonds also noted that plaintiff had normal strength in his extremities. *Id.* at 301. Based on the medical record and examination, Dr. Simmonds found that plaintiff had a painful range of motion of the neck and lower back with pain along the paravertebral muscular groups. *Id.* Dr. Simmonds opined that plaintiff could: push/pull/lift/carry fifty pounds occasionally and 25 pounds frequently; walk/stand six hours per day; could frequently bend, kneel, stoop, crawl, crouch, and engage in activities involving agility; and had no sitting or fine and gross manipulative movements restrictions. *Id.*

In reaching her RFC determination, the ALJ gave moderate weight to the opinion of Dr. Simmonds, finding that the record only supported the exertional, standing, and walking limitations.[4] *Id.* at 32. The ALJ's RFC determination is supported by substantial evidence. Other than two wrist surgeries, well before the alleged onset of disability, there is no evidence that plaintiff suffered from any right hand injuries, pain, or limitations during the relevant period. As for plaintiff's back, plaintiff sought minimal treatment for his pain, and Dr. Simmonds, taking into account the back pain, opined that plaintiff could push/pull/lift/carry fifty pounds occasionally and 25 pounds frequently, as well as walk/stand six hours a day.

Accordingly, the ALJ made a proper RFC determination that was supported by substantial evidence.

### C. The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Credibility

Plaintiff complains that the ALJ improperly discounted his credibility. P. Mem. at 7-8. Specifically, plaintiff argues that the reasons the ALJ provided were not clear and convincing. *Id.*

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[5] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis.

---

[4] The ALJ also gave moderate weight to the State Agency physician, Dr. R. Bitonte, who opined similar physical limitations. AR at 32.

[5] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 31. At the second step, the ALJ found evidence suggesting malingering. *Id.* at 32. Dr. Jordan noted that plaintiff "appeared to highly embellish if not fabricate psychiatric symptomatology," "[t]here was no evidence of any memory or any other cognitive impairment as reported by [plaintiff]," and there was "significant inconsistency." *Id.* at 285; *see id.* at 32. This evidence of malingering was a sufficient basis for the ALJ to find plaintiff not credible.

Even if Dr. Jordan's comments were insufficient to establish malingering, the ALJ's rejection of plaintiff's credibility was still proper because the ALJ provided clear and convincing reasons for doing so. The ALJ specifically discounted plaintiff's credibility because: (1) his alleged limitations were inconsistent with the record; (2) he failed to seek treatment; and (3) he made

13

inconsistent statements concerning his work history, medication usage, and ability to drive. *Id*. at 31-33.

The first ground the ALJ provided for finding plaintiff less credible was that his actions showed that he was "less restricted" than he alleged. *Id.* at 31-32. At the hearing, plaintiff testified that he could not stand or sit without pain. *Id.* at 68. Although plaintiff never testified exactly how long he could sit or stand, his testimony, along with his attorney's hypothetical of only two hours in an eight-hour day, implied minimally. *See id.* at 72. The ALJ noted that plaintiff's attendance at AA classes three times a week and 18 months of court-ordered classes required standing and sitting "in excess of" what plaintiff claimed capable of. *Id.* at 31. The ALJ also noted that Dr. Simmonds observed that plaintiff had a normal gait, had normal posture, could get on and off the examination table without difficulty, and was seated comfortably throughout the examination and interview. *Id.* at 32, 300. The ALJ further found that an examining physician for plaintiff's outpatient treatment program, which "may [have] include[d] mild physical activities such as walking and sitting for extended periods," imposed no activity restrictions. *Id.* at 32, 330. All of these findings support the ALJ's determination that plaintiff's abilities were greater than his alleged limitations.

The second ground for an adverse credibility finding – failure to seek treatment – was partially clear and convincing. *Id.* at 31-32; *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (failure to seek treatment may be a basis for an adverse credibility finding). The ALJ cited both plaintiff's failure to seek treatment for his depression and back pain as reasons to discount plaintiff's credibility, but only the latter is clear and convincing.

Regarding plaintiff's depression, the ALJ found that despite plaintiff's treatment for alcoholism and mental health treatment in 2010, his failure to obtain ongoing treatment for his depression was damaging to his credibility. AR at 32. But "it is common knowledge that depression is one of the most underreported

illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Thus, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* (internal quotation marks and citation omitted). Moreover, plaintiff's depression may have been induced by his alcoholism. *See* AR at 288. As such, treatment for his alcoholism may have been equivalent to treatment for his depression, and separate ongoing treatment for depression may not have been necessary.

As for plaintiff's back pain – the majority of which documented back pain was after the date last insured, December 31, 2007 (*id.* at 216) – the ALJ correctly determined that the treatment notes showed that plaintiff did not seek any treatment between February 2008 and December 2011. *See id.* at 31, 431-33, 436-37. The record also shows that plaintiff only received conservative treatment and failed to adhere to his treatment plan. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *Tommasetti*, 533 F.3d at 1039 (failure to follow a prescribed course of treatment weighs against a claimant's credibility). Dr. Weiner ordered physical therapy and prescribed anti-inflammatory medication, but plaintiff failed to comply with the treatment plan and did not obtain physical therapy. *See* AR at 431-35; *Tommasetti,* 533 F.3d at 1040 (describing physical therapy and anti-inflammatory medication as conservative treatment). Thus, plaintiff's failure to seek treatment for back pain was a clear and convincing reason to discount his credibility, although his failure to seek treatment for depression was not.

Finally, the remaining ground for finding plaintiff less credible – inconsistent statements concerning his work history, medication usage, and ability to drive – was clear and convincing. *See id.* at 32-33. Regarding plaintiff's work

history, he testified that he stopped working in 2004, tried going back to work in 2006, and thereafter had no income. *Id.* at 62; *see also id.* at 173. In contrast to his testimony at his 2012 hearing, on August 24 and 25, 2010, plaintiff reported to Dr. Megha Miglani of Cedars-Sinai that he had been unemployed for the previous six months, and told another Cedars-Sinai physician that he did odd jobs he picked up outside Home Depot.[6] *Id.* at 237, 262. As for his medication usage, plaintiff told Dr. Jordan that he did not take any psychiatric medication because he ran out three to four months prior. *Id.* at 287. But on the same day, plaintiff told Dr. Simmonds that he took seroquel and fluoxetine. *Id.* at 299. Plaintiff also initially told Dr. Jordan that he did not drive because he did not feel safe doing so, but later admitted it was because his license was suspended due to two DUIs. *Id.* at 285. Although each of these inconsistencies may be minor by themselves, taken together as a whole, they reflect a pattern.

In sum, the ALJ cited multiple clear and convincing reasons supported by substantial evidence for discounting plaintiff's credibility. Thus, the ALJ's finding was proper.

**D.    The ALJ Did Not Err at Step Five**

Plaintiff argues that the ALJ erred at step five. P. Mem. at 8-9. Specifically, plaintiff asserts that had the ALJ properly determined his RFC as sedentary, he would be considered disabled under Rule 201.10 of the Medical Vocational Guidelines found at 20 C.F.R. part 404, Subpart P, Appendix 2 ("Grid"). *Id.*

---

[6] The ALJ also cited Dr. Simmond's report, in which Dr. Simmonds wrote that plaintiff reported he last worked as a painter in 2009. AR at 32, 299. As defendant recognizes, Dr. Simmonds likely made a typographical error. D. Mem. at 8. Nevertheless, the ALJ's reliance on this was harmless as he cited other inconsistencies.

16

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1512(f), 416.912(f). The Commissioner may do so by the testimony of a vocational expert or by reference to the Grid. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

Plaintiff's underlying argument is that the ALJ erred in finding that he had the RFC to perform medium work. Because the ALJ made a proper RFC determination, she did not err at step five. Moreover, even assuming that plaintiff had an RFC for only sedentary work, he was forty-six years old on the date last insured and would have been not disabled under Rule 201.20 of the Grid for the alleged period of disability. As such, the ALJ did not err at step five.

## V.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: September 24, 2013

_____
SHERI PYM
United States Magistrate Judge